UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHIE ABLAZA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>SANOFI-AVENTIS U.S. LLC,<br><br>Defendant. | Case No. 21-cv-01942-JST<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 42 |

Before the Court is Defendant Sanofi-Aventis U.S. LLC's ("Sanofi") motion to dismiss. ECF No. 42. The Court will grant the motion in part and deny it in part.

## I. BACKGROUND

Plaintiffs Richie Ablaza, Betty Fellows, John Barone, Lee Weinman, Linda Cheslow, Michael Falco, and Melissa Aldridge filed this putative class action against Sanofi, a company that sells, markets, and distributes IcyHot® Lidocaine Plus Menthol cream; IcyHot® Lidocaine Patch Plus Menthol; Aspercreme® with Lidocaine cream; and Aspercreme® with Lidocaine Pain Relief Patch (collectively, "products"). According to the first amended complaint ("FAC"), Sanofi advertises these products as "Max Strength," even though there are prescription patches and over-the-counter creams that contain higher percentages of lidocaine. ECF No. 37 ¶ 8. The FAC alleges that despite Sanofi's awareness that its products are not maximum strength, it chose to "prey[] on consumers' desire for maximum pain relief to drive substantial profits." *Id.* ¶¶ 37, 41. Had Plaintiffs and Class Members known the truth about the "Max Strength" representation, they claim they "would not have purchased the Products, or would not have paid as much for the Products." *Id.* ¶¶ 45, 48.

The FAC alleges the following causes of action: (1) breach of express warranty; (2) breach

of implied warranty of merchantability; (3) violation of California's False Advertising Law ("FAL"); (4) violation of California's Unfair Competition Law ("UCL"); (5) violation of California's Consumer Legal Remedies Act ("CLRA"); (6) violations of the New York Deceptive Trade Practices Act; (7) violations of the New York Deceptive Sales Practice Act; (8) violation of the Illinois Consumer Fraud Act; (9) violation of the Illinois Uniform Deceptive Trade Practices Act; (10) fraud; and (11) unjust enrichment. ECF No. 37.

## II. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. § 1332.

## III. LEGAL STANDARD

### A. Rule 12(b)(1)

If a plaintiff lacks Article III standing to bring a suit, the federal court lacks subject matter jurisdiction and the suit must be dismissed under Rule 12(b)(1). *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). "A Rule 12(b)(1) jurisdictional attack may be facial or factual. In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004) (citation omitted). Where, as here, the defendant asserts a facial attack, the court assumes that the complaint's allegations are true and draws all reasonable inferences in the plaintiffs' favor. *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

### B. Rule 12(b)(6)

A complaint need not contain detailed factual allegations, but facts pleaded by a plaintiff must be "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter that, when accepted as true, states a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While this standard is not a probability

requirement, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks and citation omitted).  In determining whether a plaintiff has met this plausibility standard, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the plaintiff.  *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005) (citation omitted).

Any claims that are "grounded in fraud . . . must satisfy the traditional plausibility standards of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b)." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  The heightened pleading standard of Federal Rule of Civil Procedure 9(b) provides that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  Allegations of fraud must "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong.  Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks, alteration, and citations omitted).

### IV.   DISCUSSION

#### A.   Rule 12(b)(1)

##### 1.   Nationwide Class

Sanofi argues that Plaintiffs' claims should be dismissed for lack of standing with respect to each state where no purported class representative resides.  ECF No. 42 at 20.  Plaintiffs respond that the Court should defer the issue of standing until class certification is resolved.  ECF No. 47 at 31-32.  The Ninth Circuit in *Melendres* acknowledged that courts have reached differing conclusion on this issue, but held that "the issue [is] better addressed as part of class certification." *Pecanha v. The Hain Celestial Group, Inc.*, No. 17-cv-04517-EMC, 2018 WL 534299, at *9 (N.D. Cal. Jan. 24, 2018) (citing *Melendres v. Arpaio*, 784 F.3d 1254, 1261-62) (9th Cir. 2015)).  Although *Melendres* "involved a dissimilarity in injuries suffered," while this case involves named plaintiffs bringing legal claims pursuant to state laws for states they do not reside in, "the

distinction is not material for purposes of taking the class certification approach." *Id*. Therefore, the Court will not dismiss the FAC for failure to establish nationwide class standing.

### 2. Causation

Next, Sanofi contends that Plaintiffs' alleged injuries are "not fairly traceable" to Sanofi's "Max Strength" label and should therefore be dismissed for lack of standing. ECF No. 42 at 19. The FAC alleges that Plaintiffs and Class Members "would not have purchased (or paid a premium) for Defendant's Products had they known the true facts regarding the 'Max Strength' claims made on the Products' labels and in Defendant's advertising." ECF No. 37 ¶ 279. Similar language has been found to adequately allege injury by the Ninth Circuit and other courts. *See Davidson*, 889 F.3d at 965-66 (finding that Plaintiff adequately alleged injury where complaint stated that Plaintiff would not have purchased Defendant's product, or would have paid less for the product, had she known the true nature of the product); *Lanovaz v. Twinings N. Am., Inc.*, No. C-12-02646-RMW, 2013 WL 675929, at *6 (N.D. Cal. Feb. 25, 2013) (The "alleged purchase of a product plaintiff would not otherwise have purchased but for the alleged unlawful label is sufficient to establish an economic injury-in-fact."); *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 330 (2011) (a consumer's allegation that "she would not have bought the product but for the misrepresentation . . . is sufficient to allege causation . . . [and] to allege economic injury"). The Court therefore denies the motion to dismiss on this basis.

### 3. Equitable Relief

Next, Sanofi argues that the Court should dismiss Plaintiffs' claims seeking equitable relief because Plaintiffs' "have not satisfied and cannot satisfy the inadequate remedy at law requirement" under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). ECF No. 42 at 18. Plaintiffs respond that *Sonner* "simply holds that a plaintiff 'must establish that she lacks an adequate remedy at law before securing' equitable relief – not before pleading it." ECF No. 45 at 9. For the reasons set forth below, the Court agrees with Plaintiffs but will nonetheless dismiss their claims for equitable relief.

In *Sonner*, the Ninth Circuit held that "federal courts must apply equitable principles derived from federal common law to claims for equitable restitution under" the UCL and CLRA.

4

971 F.3d at 837. "That holding, the Ninth Circuit explained, flowed from the general principle that 'a federal court must apply traditional equitable principles before awarding restitution,' an equitable remedy." *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 686–87 (N.D. Cal. 2021) (quoting *Sonner*, 971 F.3d at 841). "One well-established equitable principle is that equitable remedies will not be awarded when there is an 'adequate remedy at law.'" *Id.* at 687 (quoting *Sonner*, 971 F.3d at 842). Thus, the Ninth Circuit "affirmed the dismissal of the plaintiff's UCL and CLRA claims for equitable restitution because the plaintiff failed to: (i) allege she lacked an adequate remedy at law, and (ii) show she lacked an adequate remedy at law for damages under [the] CLRA." *Souter v. Edgewell Pers. Care Co.*, No. 20-CV-1486 TWR (BLM), 2022 WL 485000, at *12 (S.D. Cal. Feb. 16, 2022) (citing *Sonner*, 971 F.3d at 844-45). In *Sonner*, the court found that the plaintiff sought the same sum in equitable restitution as "a full refund of the purchase price – $32,000,000 – [which] she requested in damages to compensate her for the same past harm." 971 F.3d at 844. The *Sonner* court denied the plaintiff's claim because she failed to "explain how the same amount of money for the exact same harm is inadequate or incomplete." *See id.*

The undersigned has previously applied *Sonner* as Sanofi suggests. *See Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891, 908-09 (N.D. Cal. 2021). More recently, however, after a review of cases from other district courts in the Ninth Circuit, the Court has determined more nuanced approach is appropriate. First, the plaintiff in *Sonner* did not even allege that she lacked an adequate remedy at law, 971 F.3d at 844, and another court in this district has persuasively concluded that "because *Sonner* was decided at a later posture, . . . if a plaintiff pleads that she lacks an adequate legal remedy, *Sonner* will rarely (if ever) require more this early in the case." *Johnson v. Trumpet Behav. Health, LLC*, No. 3:21-CV-03221-WHO, 2022 WL 74163, at *3 (N.D. Cal. Jan. 7, 2022). Second, given the unique facts of *Sonner*, it is not clear that its holding applies to all forms of equitable relief. It is easy to find equivalence between two separate requests for an identical $32,000,000; it is harder to do so with respect to a claim for damages, on the one hand, and a claim for injunctive relief, on the other. *See Zeiger*, 526 F. Supp. 3d at 687 (citing *Milliken v. Bradley*, 433 U.S. 267, 288-90 (1977) for the proposition that "[t]he Supreme Court has often

5

affirmed that retrospective money damages play a markedly different role than prospective injunctive relief."); *see also Hrapoff v. Hisamitsu Am., Inc.*, No. 21-CV-01943-JST, 2022 WL 2168076, at *6 (N.D. Cal. June 16, 2022) (applying the foregoing analysis).

Notwithstanding these considerations, however, the Court will grant Sanofi's motion to dismiss Plaintiffs' equitable claims because the FAC does not allege that Plaintiffs lack an adequate remedy at law. Accordingly, their claims fail even under the Court's more generous reading of *Sonner*. Plaintiffs have leave to amend these claims.

## B. Fraud-Based Claims

### 1. Actionable Deception

Sanofi argues that Plaintiffs' fraud claims must be dismissed because the "maximum strength" statement is not false or deceptive. ECF No. 42 at 21. There are two prongs to Sanofi's argument: that the FAC's suggestion that other over-the-counter products contain higher percentages of lidocaine than Sanofi's is simply false; and that the comparison between the lidocaine levels in Sanofi's over-the-counter products and those in prescription products cannot be the basis of a fraud claim because "prescription products are stronger than OTC products, which is why prescription products require doctor authorization, and Plaintiffs do not allege facts establishing that a reasonable consumer could believe that a 'maximum strength' representation on an OTC product means that a doctor could not prescribe a stronger product." *Id.* at 22.

The Court rejects the first prong of Sanofi's argument because the motion to dismiss stage is not the appropriate place to resolve disputes of fact. It rejects the second prong for the reasons stated in a companion case, *Scilex Pharmaceuticals, Inc. v. Sanofi-Aventis*, 21-cv-1280-JST, ECF No. 86 (N.D. Cal. Aug. 16, 2021), where the Court examined labels that were the same or similar to the labels at issue here.[1] Ultimately, the Court found that the question of whether a reasonable consumer could imply from the "max strength" language on the label that the products are superior, or at least equivalent, in efficacy and results to prescription-strength lidocaine products is a question of fact. *Id.* at 19, 21-22. The Court here adopts its reasoning from its prior order in

---

[1] The Court in *Scilex* considered the same IcyHot® Lidocaine Patch Plus Menthol packaging as well as similar Aspercreme labels. 21-cv-1280-JST, ECF No. 90 ¶¶ 1, 18, 37-51.

6

*Scilex* and denies Sanofi's motion to dismiss on this ground.

Next, Sanofi contends that a dismissal is warranted because "none of Plaintiffs allege that they had or could have obtained prescriptions for the stronger lidocaine products." ECF No. 42 at 22. Sanofi offers no case authority for this requirement, which it appears to have manufactured from thin air. The case it does cite, *Bober v. Glaxo Wellcome*, No. 99 C 3243, 1999 WL 759364, at *3 (N.D. Ill. Sept. 3, 1999), *aff'd sub nom. Bober v. Glaxo Wellcome PLC*, 246 F.3d 934 (7th Cir. 2001), stands for a different proposition.

In any event, Plaintiffs' complaint does not rest on the theory that they would have purchased prescription products instead of Sanofi's. Instead, the complaint alleges that, had they known stronger products existed, Plaintiffs would not have purchased Sanofi's's products or would have paid less for them. *See, e.g.*, ECF No. 37 ¶¶ 58, 63, 69, 74, 80, 85. This is sufficient at this stage of the litigation. *See Boswell v. Costco Wholesale Corp*., No. SA CV 16-0278-DOC (DFMx), 2016 WL 3360701, at *5 (C.D. Cal. June 6, 2016) (finding injury in fact sufficiently alleged where the complaint stated that the plaintiffs "paid more for Kirkland Coconut Oil, and would only have been willing to pay less, or unwilling to purchase it at all, absent the false and misleading label"); *Racies v. Quincy Bioscience, LLC*, No. 15-cv-292-HSG, 2015 WL 2398268, at *5 (N.D. Cal. May 19, 2015) (The "alleged purchase of a product that plaintiff would not otherwise have purchased but for the alleged unlawful label is sufficient to establish an economic injury-in-fact.") (quoting *Lanovaz*, 2013 WL 675929, at *6).

Sanofi also argues that Plaintiffs have not adequately established that Sanofi owed a duty to disclose that stronger prescription products exist. A duty to disclose is triggered when "disclosure is necessary to counter an affirmative misrepresentation." *McCoy v. Nestle USA, Inc.*, 173 F. Supp. 3d 954, 966 (N.D. Cal. 2016). Here, the complaint states that Sanofi was required to counter the "maximum strength" misrepresentations by disclosing the fact that stronger lidocaine products existed. *See, e.g.*, ECF No. 37 ¶ 127 ("Defendant . . . made material misrepresentations"). The Court finds that the complaint sufficiently alleges a duty to disclose

based on an affirmative misrepresentation theory.[2]

### 2. Intent to Defraud

Intent is an essential element of a fraud claim under California, New York, and Illinois law.[3] *Warren v. Wells Fargo & Co.*, No. 3:16-cv-2872-CAB-(NLS), 2017 WL 4876212, at *11 (S.D. Cal. Oct. 27, 2017); *Bank of N. Illinois v. Nugent*, 584 N.E.2d 948, 954-55 (Ill. App. Ct. 1991); *Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 808 (S.D.N.Y. 2021). Sanofi moves to dismiss Plaintiffs' common-law fraud claims for failing to adequately allege that Sanofi intended to deceive consumers. ECF No. 42 at 24.

"While the heightened pleading requirements of Rule 9(b) do not apply to allegations of knowledge or intent, Plaintiffs must still plead facts establishing scienter with the plausibility required under Rule 8(a)." *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-CV-01390-LHK, 2011 WL 311376, at *8 (N.D. Cal. Jan. 28, 2011) (internal citation omitted). Here, the complaint contains only conclusory allegations that Sanofi "knew the misrepresentations and omissions regarding the Products were false and misleading." ECF No. 37 ¶ 272. The complaint also alleges, in a conclusory manner, that "Defendant intended for Plaintiffs and Class Members to be deceived or mislead [sic] by its misrepresentations and omissions." *Id.* ¶ 46. However, "'mere conclusory allegations' that representations or omissions 'were intentional and for the purpose of defrauding and deceiving plaintiffs . . . are insufficient.'" *Pemberton v. Nationstar Mortg. LLC*, 331 F. Supp. 3d 1018, 1047 (S.D. Cal. 2018) (quoting *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115 (2007) (ellipsis in original)). Because Plaintiffs do not allege any non-conclusory facts regarding Sanofi's knowledge and intent, Plaintiffs' common law fraud claims must be

---

[2] Sanofi also argues that "[u]nder California law, *absent an affirmative misrepresentation*, a defendant's duty to disclose is generally 'confined to safety issues,'" and no safety issues are alleged in the complaint. ECF No. 42 at 24 (citing *Wirth v. Mars Inc.*, No. SA CV 15-1470-DOC (KESx), 2016 WL 471234, at *3 (C.D. Cal. Feb. 5, 2016) (emphasis added)). Because the Court finds that the complaint alleges an affirmative misrepresentation, it will not dismiss the complaint on this basis.

[3] Sanofi also makes an argument under New Jersey law to which Plaintiffs do not respond. ECF No. 42 at 24. Plaintiffs bring their state law claims under the laws of California, New York, and Illinois, but not New Jersey. Before making arguments under New Jersey law, Sanofi must first persuade the Court that New Jersey law applies.

dismissed. *Elgindy v. AGA Serv. Co.*, No. 20-CV-06304-JST, 2021 WL 1176535, at *14 (N.D. Cal. Mar. 29, 2021).

### 3. Economic Loss Doctrine

Sanofi argues that Plaintiffs' common law fraud claims are barred by the economic loss rule. "The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).

California recognizes an exception to the economic loss doctrine "where the contract was fraudulently induced" due to an affirmative misrepresentation. *Id.* at 989-91 (citation omitted); *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021) ("In *Robinson*, the California Supreme Court held that the economic loss rule does not bar fraud claims premised on affirmative misrepresentations."). Because the complaint alleges fraud based on an affirmative misrepresentation on the label, the economic loss rule does not bar these claims under California law. *See Arabian v. Organic Candy Factory*, No. 2:17-cv-05410-ODW-PLA, 2018 WL 1406608, at *8 (C.D. Cal. March 19, 2018) (finding fraud and misrepresentation claims not barred by economic loss rule where complaint alleged "that Defendant fraudulently induced Plaintiff to enter into contract for the purchase of the Gummy Cubs, by affirmatively misrepresenting the Class Products [as] contain[ing] Real Ingredients"); *Takano v. Procter & Gamble Co.*, 2018 WL 5304817, at *11 (E.D. Cal. Oct. 24, 2018) (citing cases for the proposition that "New York and California 'have allowed intentional misrepresentation claims to proceed, notwithstanding the economic loss rule'").

Sanofi also makes arguments under New Jersey's economic loss rule. That doctrine, as it relates to fraud claims, has been described by the Third Circuit as a "morass." *See Gleason v. Norwest Mortgage, Inc.*, 243 F.3d 130 (3d Cir. 2001), *abrogated on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Engineers & Participating Emps.*, 571 U.S. 177 (2014). District courts in New Jersey have also acknowledged "the ambiguous status of the law in this area." *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002); *see also Touristic Enters. Co. v. Trane Inc.*, No. 09-02732, 2009

9

WL 3818087, at *2 (D.N.J. Nov. 13, 2009) ("[T]he exact parameters of the economic loss doctrine are both complex and troublesome."). Because the Court has already dismissed the common law fraud claims for failure to plead fraudulent intent, and because Sanofi has not yet persuaded the Court that New Jersey law applies, *see* note 3, *supra,* the Court does not address the issue further.

### C. Other Claims

#### 1. UCL Claims

California's UCL "prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" *In re Pomona Valley Med. Grp.*, 476 F.3d 665, 674 (9th Cir. 2007) (quoting Cal. Bus. & Prof. Code § 17200 *et seq.*). The UCL's coverage is "sweeping," and its standard for wrongful business conduct is "intentionally broad." *In re First Alliance Mortg. Co.*, 471 F.3d 977, 995 (9th Cir. 2006). A claim that sufficiently pleads any one of these prongs will survive a motion to dismiss. *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App. 4th 1544, 1554 (2007).

A plaintiff may bring a claim under the fraudulent prong of the UCL if the defendant's conduct is "likely to deceive members of the public." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255 (2009). In addition, a plaintiff must allege the existence of a duty to disclose, *Berryman*, 152 Cal. App. 4th at 1557, as well as reliance, *In re Tobacco II Cases*, 46 Cal. 4th 298, 328 (2009).

In its discussion of fraud-based claims, the Court found that the complaint adequately alleges actionable deception and a duty to disclose. As for reliance, the complaint states that the "max strength" representation "instantly catches the eye of all reasonable consumers, including Plaintiffs and Class Members" and that "Plaintiffs . . . suffered injuries . . . because they purchased Defendant's Products in reliance on Defendant's false and misleading 'Max Strength' lidocaine labeling claims." ECF No. 37 ¶¶ 36 184. These allegations are sufficient to establish reliance. *See Watkins v. MGA Entm't, Inc.*, 550 F. Supp. 3d 815, 834 (N.D. Cal. 2021) ("To plead reliance, a plaintiff must truthfully allege that she would not have bought the product but for the allegedly actionable misrepresentation or omission.") (internal quotation marks and citations omitted).

Because the parties agree that Plaintiffs' "unlawful" claim under the UCL depends on the

1  same theory of deception as their claim under the "fraudulent" prong, *see* ECF No. 42 at 26 ("their
2  claim fails with their failure to allege any actionable predicate claims for all of the reasons set
3  forth herein"); ECF No. 47 at 19; ECF No. 50 at 17, the Court finds that the allegations in the
4  complaint sufficiently state a claim for relief under the fraudulent prong of the UCL.

"Under the UCL's unfairness prong, courts consider either: (1) whether the challenged conduct is tethered to any underlying constitutional, statutory or regulatory provision, or that it threatens an incipient violation of an antitrust law, or violates the policy or spirit of an antitrust law; (2) whether the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers; or (3) whether the practice's impact on the victim outweighs 'the reasons, justifications and motives of the alleged wrongdoer." *Doe v. CVS Pharmacy, Inc.*, 982 F.3d 1204, 1214-15 (9th Cir. 2020) (internal quotation marks and citations omitted). The parties' briefs focus only on the first test, which is sometimes called the "tethering test," and the last one, which is sometimes called the "balancing test." ECF No. 42 at 27; ECF No. 47 at 18-19. Here, because the Court has already found that Plaintiffs adequately allege conduct that is misleading and fraudulent, actionable deception claims, the same conduct also meets "either of the applicable 'unfair' standards both as conduct that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers' and conduct that violates a particular public policy — prohibitions against fraud." *Hilario v. Allstate Ins. Co.*, No. 20-cv-05459-WHO, 2020 WL 7643233, at *9 (N.D. Cal. Dec. 23, 2020).

### 2. Express Warranty

To state a claim for breach of express warranty, a plaintiff must allege that "(1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1227 (2010) (California law) (internal quotation marks and citation omitted); *Promuto v. Waste Mgmt. Inc.*, 44 F. Supp. 2d 628, 642 (S.D.N.Y. 1999) (similar elements under New York law); *Indus. Hard Chrome Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 747 (N.D. Ill. 1999) (similar elements under Illinois law).

Sanofi contends that the express warranty claims should be dismissed because "a consumer

1    could not reasonably construe the 'maximum strength' statement to mean that the Sanofi Products
2    contain a higher lidocaine concentration than what has been expressly stated on the packaging."
3    ECF No. 50 at 18. This argument mischaracterizes Plaintiffs' theory. Plaintiffs are not alleging
4    that a reasonable consumer would think that the products contain more than 4% lidocaine.
5    Instead, the complaint alleges that a reasonable consumer understands the "maximum strength"
6    language to mean that the products contain the maximum amount of lidocaine available. *See, e.g.*,
7    ECF No. 37 ¶¶ 10, 31, 37, 39. Whether the label could deceive a reasonable consumer in this way
8    is a question of fact. Accordingly, the motion to dismiss the express warranty claims is denied.

### 3. Implied Warranty

The implied warranty of merchantability guarantees that goods meet "a minimum level of quality," not that the goods "precisely fulfill the expectation of the buyer." *Am. Suzuki Motor Corp v. Super. Ct.*, 37 Cal. App. 4th 1291, 1295 (1995). "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303 (2009) (internal quotations and citation omitted).

Sanofi argues that the implied warranty claims should be dismissed because Plaintiffs "complain that the Sanofi Products do not contain the most lidocaine available, not that the Sanofi Products do not satisfy the basic degree of fitness for ordinary use." ECF No. 42 at 30. In addition, Sanofi points out that the implied warranty claim cannot be squared with Plaintiffs' statements elsewhere in the complaint "that they intend to use the products again if the labeling is changed." *Id.* (citing ECF No. 37 ¶¶ 53, 64, 75, 86, 97, 108, 119, 146). Plaintiffs do not squarely address these arguments, nor do they allege that the products lack "even the most basic degree of fitness for ordinary use." Instead, they state that the products are "inaccurately labeled" and attempt to limit the cases Sanofi cites to their facts. ECF No. 47 at 22-24. These arguments are unpersuasive. Inaccurate labels on a product do not necessarily demonstrate that the product itself lacks "a minimum level of quality." *Am. Suzuki Motor Corp*, 37 Cal. App. 4th at 1295; *see Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 897 (C.D. Cal. 2013) (dismissing the implied warranties of merchantability and fitness claims where the plaintiff "d[id] not allege that Hansen's diet soda lacks 'even the most basic degree of fitness for ordinary use;' nor d[id] he

1  allege that the drink is not suitable for use as a diet soda").

2  Plaintiffs' implied warranty claims under New York and Illinois law must be dismissed for
3  the additional reason that contractual privity is an element of a claim in those states, and Plaintiffs
4  do not allege that they purchased lidocaine products directly from Sanofi. *Adirondack*
5  *Combustion Techs., Inc. v. Unicontrol, Inc.*, 793 N.Y.S.2d 576, 579 (2005) ("A claim based upon
6  a breach of an implied warranty requires a showing of privity between the manufacturer and the
7  plaintiff when there is no claim for personal injuries."); *Jamison v. Summer Infant (USA), Inc.*,
8  778 F. Supp. 2d 900, 913 (N.D. Ill 2011) ("Under Illinois law, privity of contract is a prerequisite
9  to recover economic damages for breach of implied warrant, and privity of contract only exists
10 between buyers and immediate sellers." (internal quotation marks and citation omitted)).

11 Accordingly, the motion to dismiss the implied warranty claims is granted with leave to
12 amend.[4]

### 4. Unjust Enrichment

14 The complaint includes an unjust enrichment claim under unspecified state law. "[C]ourts
15 in this district have . . . held that a plaintiff must specify the state under which it brings an unjust
16 enrichment claim," because "there may be (and very likely are) differences from state to state
17 regarding issues such as the applicable statute of limitations and various equitable defenses." *In re*
18 *TFT-LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011) (citing cases).
19 Because Plaintiffs have failed to allege which state law governs their unjust enrichment claims, the
20 Court grants Sanofi's motion to dismiss with leave to amend.

21 / / /
22 / / /
23 / / /
24 / / /
25 / / /

---

[4] Sanofi also argues that "any purported defect of the Sanofi Products could have been discovered by Plaintiffs upon an inspection of the Products." ECF No. 50 at 19. Because Plaintiffs have failed substantively to allege an implied warranty claim, the Court does not reach this argument.

13

**CONCLUSION**

For the foregoing reasons, Sanofi's motion to dismiss is granted in part and denied in part. Plaintiffs may file an amended complaint within 21 days of the date of this order.

**IT IS SO ORDERED.**

Dated:  July 11, 2022



JON S. TIGAR
United States District Judge