1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Kevin Laukaitis*
Jonathan Shub (State Bar No. 237708)
**SHUB LAW FIRM LLC**
134 Kings Highway E, 2nd Floor
Haddonfield, NJ 08033
T: 856-772-7200
F: 856-210-9088
klaukaitis@shublawyers.com
jshub@shublawyers.com

*Admitted Pro Hac Vice*

*Attorneys for Plaintiffs*
*and Putative Class Members*

[Additional counsel listed on signature page]

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RICHIE ABLAZA, JOHN BARONE, LINDA CHESLOW, BETTY FELLOWS, MICHAEL FALCO, MELISSA ALDRIDGE,** and **LEE WEINMAN,** individually and on behalf of themselves and all others similarly situated, | Case No.  4:21-cv-01942-JST |
| | **SECOND AMENDED CLASS ACTION COMPLAINT** |
| Plaintiffs, | |
| v. | **JURY TRIAL DEMANDED** |
| **SANOFI-AVENTIS U.S. LLC,** | |
| Defendant. | |

Plaintiffs, Richie Ablaza, John Barone, Linda Cheslow, Betty Fellows, Michael Falco, Melissa Aldridge, and Lee Weinman ("**Plaintiffs**"), on behalf of themselves and all others similarly situated, bring this class action against Defendant, Sanofi-Aventis U.S. LLC, ("**Defendant**" or "**Sanofi**"), and allege on personal knowledge, investigation of their counsel, and on information and belief as follows:

## INTRODUCTION

1.     Defendant, Sanofi, offers a variety of over-the-counter and prescription products including transdermal patches, pain relief products, and skin care products. Defendant's over-the-counter, Aspercreme®- and IcyHot®-branded products include a range of external pain relieving patches and creams for pain associated with or caused by ailments such as arthritis, backache, muscle strains, sprains and bruises.

2.     Particularly, Defendant sells, markets, and distributes: the IcyHot® Lidocaine Plus Menthol cream ("IcyHot Cream"); the IcyHot® Lidocaine Patch Plus Menthol ("IcyHot Patch"); the Aspercreme® with Lidocaine cream ("Aspercreme Cream"); and the Aspercreme® with Lidocaine Pail Relief Patch ("Aspercreme Patch") (collectively, the "**Products**").[1]

3.     These products are sold in conjunction with substantially similar products produced by Sanofi-Aventis which also come in "roll-in" forms and aerosol sprays, among potential others.

4.     Nearly every individual suffers muscle aches and pains and seeks relief for this common problem.

5.     When consumers purchase pain-relieving products the strength of the dose is an important purchasing consideration. In fact, consumers willingly pay a premium for pain-reliving products that have strong doses and/or are maximum strength.[2]

---

[1] The Products are manufactured by Chattem, Inc., a wholly-owned subsidiary of Sanofi-Aventis U.S. LLC. Should discovery reveal that Chattem, Inc. should be included as a Defendant in this case, Plaintiffs reserve the right to amend their complaint to include Chattem, Inc. (or any other entity) as an additional defendant in this case.

[2] Defendant's non-lidocaine pain reliving patches sell for approximately $2.00 per patch while the lidocaine ones sell for $2.50. *See* https://www.cvs.com/shop/icy-hot-lidocaine-patch-5ct-prodid-1350006 (for lidocaine version) and https://www.cvs.com/shop/icy-hot-max-strength-lidocaine-plus-menthol-pain-relief-patches-for-back-or-large-area-5-ct-prodid-1012200 (for the non-lidocaine version). Plaintiffs only use the pricing in the previous paragraph as an example to plausibly plead that Defendant does indeed charge a large premium for its Products. The specific premium on a granular

6.     Defendant takes advantage of this consumer preference for strong doses and/or maximum strength by prominently representing where the one place that every consumer looks when purchasing a product – the packaging and labels themselves. In fact, Defendant touts its representation and claim right on the front of its Products' labels that the Products are "Max Strength" lidocaine products.

7.     Consumers including Plaintiffs lack the scientific knowledge necessary to determine whether the Products are "Max Strength" lidocaine products or to ascertain the true nature of the quality or strength of the Products. As such, reasonable consumers must and do rely on manufacturers, like Defendant, to be transparent and properly disclose on the packaging all material information regarding the Products and their dose and strength.

8.     However, Defendant makes this "Max Strength" representation in a knowingly false and deceptive manner because Defendant's Products contain only 4% lidocaine; with regard to "patch" products, similar prescription patches manufactured by at least one of Defendant's competitors contain 5% lidocaine; with regard to "cream" products, similar creams manufactured by at least one of Defendant's competitors contain 5% lidocaine.[3]

9.     Moreover, Defendant has not only represented that its Products are "Max Strength" lidocaine products, but it has also omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

10.     Defendant sells and distributes the Products (manufactured through its wholly-owned subsidiary, Chattem, Inc., as referenced in n.1, *supra*) employing a marketing and advertising campaign centered around claims that appeal to consumers who Defendant knows seek out strong and/or maximum doses of lidocaine to relieve their back pain and aches by touting their Products as "Max Strength". As such, reasonable consumers, like Plaintiffs, reasonably believe that they are

---

level and the manner by which that price premium will be determined will be set forth in the case by an expert and after discovery. (Listings last accessed September 15, 2021).

[3] Regarding lidocaine cream products, at least one of Defendant's competitors offers a prescription lidocaine cream with a 5% concentration. *See* https://dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=88ca9cba-0c4a-482f-b502-ceefdb1bfbcd&type=display, *see also* https://www.drugsdepot.com/store.php/drugsdepot/pd9612367/lidocaine-5-ointment-3544-gm-by-fougera-amp-co (Last Accessed September 16, 2021).

purchasing a Lidocaine product which is at maximum strength, i.e. the highest dosage they can buy.

11. Defendant's multiple and prominent systematic mislabeling of the Products form a pattern of unlawful and unfair business practices that deceives and harms consumers and the public.[4]

12. Accordingly, Plaintiffs bring this suit on behalf of themselves and similarly situated consumers who purchased Defendant's Products. Plaintiffs and Class Members were damaged because they would not have purchased (or would not have paid a premium) for Defendant's Products had they known the true facts regarding the Products' "Max Strength" representations and omissions.

13. For all the reasons set forth herein, including but not limited to Defendant's misrepresentations and omissions regarding its "Max Strength" claims, Plaintiffs seek relief in this action individually, and as a class action on behalf of similarly situated purchasers of Defendant's Products, for: (i) breach of express warranty; (ii) breach of implied warranty of merchantability; (iii) violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq. ("FAL"); (iv) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. ("UCL"); (v) violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*. ("CLRA"); (vi) violation of New York's Deceptive Trade Act, General Business Law § 349, *et seq*.; (vii) violation of New York's Deceptive Sales Act, General Business Law § 350, *et seq*.; (viii) violation of Illinois' Consumer Fraud Act, 815 ILCS §§ 505/1, *et seq*.;  (ix) violation of Illinois' Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/2, *et seq*.; (x) common law fraud; and (xi) unjust enrichment.

## PARTIES

14. Plaintiff Richie Ablaza is a citizen of California residing in Milpitas. He purchased Defendant's IcyHot Cream during the applicable statute of limitations periods. Notably, his most recent purchase was via online retailer Amazon.com on May 11, 2021.

15. Plaintiff John Barone is a citizen of California residing in Santa Rosa. He purchased Defendant's IcyHot Patch during the applicable statute of limitations periods. Notably, he purchased these products on a recurring basis from at least November 4, 2020 to July 27, 2021 from

---

[4] *See Scilex Pharmaceuticals Inc. v. Sanofi-Aventis U.S. LLC, et al.*, 21-cv-01280-JST, Dkt No. 86, at 6 (N.D. Cal. Aug. 16, 2021) (Tigar, J.).

Amazon.com.

16.     Plaintiff Linda Cheslow is a citizen of California residing in Santa Rosa. She purchased Defendant's IcyHot Patch during the applicable statute of limitations periods. Notably, she purchased these products on a recurring basis from at least November 4, 2020 to July 27, 2021 from Amazon.com.

17.     Plaintiff Betty Fellows is a citizen of California residing in Redwood City. She purchased Defendant's Aspercreme Cream during the applicable statute of limitations periods. Notably, her most recent purchase was on September 3, 2020 from Amazon.com; she has been purchasing them from Amazon.com since at least February 7, 2018.

18.     Plaintiff Michael Falco is a citizen of New York residing in Long Island City. He purchased Defendant's Aspercreme Patch during the applicable statute of limitations periods. Notably, his most recent purchase was from Nick's Pharmacy in Brooklyn, New York on June 25, 2021.

19.     Plaintiff Melissa Aldridge is a citizen of Illinois residing in Chicago. She purchased Defendant's Aspercreme Patch during the applicable statute of limitations periods. Notably, her most recent purchase was from a Walgreens brick-and-mortar store in Chicago, Illinois on March 17, 2020.

20.     Plaintiff Lee Weinman is a citizen of Illinois residing in Chicago. He purchased Defendant's IcyHot Patch during the applicable statute of limitations. Notably, his most recent purchase was in February 2021; during the applicable period, Plaintiff Weinman purchased the Products from a variety of stores in Illinois, including Walgreens, Target, and Jewel Foods.

21.     Defendant Sanofi is a Delaware corporation, with its principal place of business at 55 Corporate Drive Bridgewater, New Jersey 08807. Defendant Sanofi markets, distributes, and sells the Products, which is manufactured by Chattem, Inc. Defendant Sanofi markets, distributes and sells the aforementioned Products to consumers throughout the United States through drug stores, mass retailers, and online retailers.

22.      Plaintiffs reserve the right to amend this Second Amended Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from the Defendant.

24.     Defendant has sufficient minimum contacts with California to be subject to this Court's personal jurisdiction. Defendant is registered to do business here.   Defendant also intentionally avails itself of the markets within California through the promotion, sale, marketing, and distribution of its Products and numerous other products, which renders this Court's exercise of jurisdiction necessary and proper.

25.     In accordance with 28 U.S.C. § 1391, venue is proper in this District because a substantial part of the conduct giving rise to Plaintiffs' claims occurred in this District, Defendant transacts business in this District, and at least one named Plaintiff resides in this District.

## FACTS COMMON TO ALL CLAIMS

26.     Lidocaine is the active ingredient in Defendant's Products, and it forms the basis for Defendant's "Max Strength" misrepresentations on the Products' front labeling, omissions, and overall advertising and marketing campaign.

27.     "Lidocaine belongs to the family of medicines called local anesthetics. This medicine prevents pain by blocking the signals at the nerve endings in the skin."[5]

28.     Lidocaine is commonly used in products such as Defendant's Products to help with body soreness and pain.

29.     Lidocaine is also a non-narcotic pain reliever, which has led to a surge in the popularity of products that contain it.[6] Indeed, Defendant has benefitted immensely from selling the Products.

---

[5] https://www.mayoclinic.org/drugs-supplements/lidocaine-topical-application-route/description/drg-20072776 (Last Accessed September 15, 2021).

[6]     https://www.globenewswire.com/en/news-release/2020/06/24/2052868/0/en/Topical-Pain-Relief-Market-to-Reach-13-276-million-by-2025-at-7-4-CAGR-Says-AMR.html ("The growth of the topical pain relief market include increase in prevalence of arthritis, diabetic neuropathy, and other bone disorders across the globe, rise in geriatric population, *fewer side effects caused by topical pain*

For example, Defendant's sales in 2019 alone were approximately $156 million.[7]

### ***Defendant's Products Prominently Feature the "Max Strength" Claim***

30.     At all relevant times, Defendant has marketed its Products in a consistent and uniform manner nationwide. Defendant sells the Products in all 50 states in brick-and-mortar stores and through online retailers.

31.     Aware of the consumer preference for strong and/or maximum doses of lidocaine in pain-relieving products to alleviate their pain, aches, and soreness, Defendant specifically advertises its Products as "Max Strength" lidocaine products.

32.     Below is an image of the IcyHot Patch's front label[8]:



_relief as compared to oral medications_, and high adoption of topical pain relief products by sportsperson.") (emphasis added) (Last Accessed September 15, 2021).

[7] https://www.statista.com/statistics/326890/external-analgesic-rubs-brands-sales-in-the-us/ (Last Accessed September 15, 2021).

[8] Upon information and belief, after filing of the original Complaint in this case, Defendant attempted to correct its false and misleading representations and omissions by changing each of the Products' labels. The labels shown in the complaint represents the labeling present, upon information and belief, of each product at the time of filing and that Plaintiffs and the proposed classes read and relied on. Since the filing of the initial Complaint in this case, Defendant, upon information and belief, now includes disclaimers either towards the bottom of their packaging or at the very top in which read: "OTC topical analgesics in patch category." *See* https://www.icyhot.com/products/lidocaine-patch/ (IcyHot Patch, "Maximum Strength Lidocaine without a Prescription*");   https://www.icyhot.com/

33.     Below is an image of the IcyHot Cream:



34.     Below is an image of the Aspercreme Patch:



---

products/lidocaine-cream/ (IcyHot Cream, same); https://aspercreme.com/products/pain-relieving-creme-with-lidocaine/ (Aspercreme Cream, "*Among OTC topical analgesics"); https://aspercreme.com/products/lidocaine-patch/ (Aspercreme patch, same) (All listing last accessed September 16, 2021)

SECOND AMENDED CLASS ACTION COMPLAINT                    Case No. 4:21-cv-01942-JST

35.     Below is an image of the Aspercreme Cream[9]:



36.     As shown above, the "MAX STRENGTH" representation is located on the very top of the front labels of the Products in bold lettering with yellow highlight in the case of the IcyHot Cream and the IcyHot Patch, against a contrasting blue highlight in the case of the Aspercreme Cream and the Aspercreme Patch, that instantly catch the eye of all reasonable consumers, including Plaintiffs and Class Members.

37.     Defendant, however, is well aware that its Products are not a "max strength" or maximum strength lidocaine products and deceives trusting reasonable consumers like Plaintiffs to believe that they are in fact purchasing such Products while omitting from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%).

---

[9]   The Aspercreme cream product contains a "Maximum Strength" representation as opposed to "Max Strength." For the purposes of this Second Amended Complaint, the representation "Max" is typically used (and in this instance) as a short-form of "Maximum." These representations are one and the same, and at bottom are substantially similar representations made by Defendant on the front labels of its lidocaine Products. Moreover, Defendant's packaging and labels have minor discrepancies through its products, including "MAX STRENGTH with LIDOCAINE", "MAX STRENGTH LIDOCAINE", "MAXIMUM STRENGTH LIDOCAINE", and others. Here, all of these representations are substantially similar because they all state that Defendant's Products contain a maximum amount (or strength) of lidocaine. And all of these representations are false and misleading for the reasons stated herein. As referred to herein, "Max" shall mean "Max" or "Maximum".

38.     Indeed, Defendant's over the counter Products contains only 4% lidocaine while competing prescription lidocaine products contain 5% lidocaine.[10]

39.     So, consumers can obtain a stronger dose comparable lidocaine product that is available in the market.

40.     As such, Defendant's Products are not "Max Strength" lidocaine products as advertised.

41.     But rather than accurately advertise its Products through its labeling and advertising, Defendant preys on consumers' desire for maximum pain relief to drive substantial profits.

42.     All reasonable consumers, including Plaintiffs, read and relied on Sanofi's "Max Strength" representations when purchasing the Products.

43.     Defendant's "Max Strength" representation was material to Plaintiffs' and Class Members' decision to purchase the Product.

44.     Defendant's marketing efforts are made in order to – and do in fact – induce consumers to purchase the Products at a premium because consumers believe they are getting lidocaine products with "Max Strength."

45.     As shown throughout this Second Amended Complaint, however, Defendant's Products are *not* "Max Strength" lidocaine products. Defendant's representations and omissions are false and misleading.

46.     Defendant intended for Plaintiffs and Class Members to be deceived or mislead by its misrepresentations and omissions.

47.     Defendant's deceptive and misleading practices proximately caused harm to Plaintiffs and the Class.

---

[10] Regarding lidocaine patch products: "This article discusses lidocaine 5% patch products available by your doctor's prescription. While there are similar over-the-counter (OTC) varieties available, those contain a lower percentage of lidocaine." *See* https://www.spineuniverse.com/treatments/medication/prescription-lidoderm-patches-may-help-relieve-back-pain (Last Accessed September 15, 2021).

Regarding lidocaine cream products, at least one of Defendant's competitors offers a prescription lidocaine cream with a 5% concentration. *See* https://dailymed.nlm.nih.gov/dailymed/fda/fdaDrugXsl.cfm?setid=88ca9cba-0c4a-482f-b502-ceefdb1bfbcd&type=display, *see also* https://www.drugsdepot.com/store.php/drugsdepot/pd9612367/lidocaine-5-ointment-3544-gm-by-fougera-amp-co (Last Accessed September 16, 2021).

48.     Plaintiffs and Class Members would not have purchased the Products, or would have not paid as much for the Products, had they known the truth about the mislabeled and falsely advertised Products.

### *Plaintiffs' Experiences Purchasing Defendant's Mislabeled Products*

#### *Plaintiff Richie Ablaza*

49.     Plaintiff Ablaza is a resident and citizen of Milpitas, California who purchased Defendant's IcyHot Cream on at least one occasion during the class period. He purchased the Product at national retailers, including online retailer Amazon.com.

50.     Prior to purchasing Defendant's Product, Plaintiff Ablaza read and reviewed information about the Product, including the fact that the Product was being sold for personal use, and not resale.

51.     When purchasing his Product, Plaintiff Ablaza reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and omissions and warranties made by Defendant that the Product was a "Max Strength" lidocaine product. Plaintiff Ablaza relied on these representations, omissions and warranties in deciding to purchase Defendant's Product.

52.     Accordingly, these representations, omissions and warranties were part of the basis of the bargain, in that he would not have purchased the Product on the same terms had he known these representations were not true.

53.     However, Plaintiff Ablaza has an intention to purchase the Product in the future if the products are truthfully labeled and not misleadingly advertised.

54.     In making his purchase, Plaintiff Ablaza paid a substantial price premium due to the false and misleading "Max Strength" representations and omissions.

55.     However, Plaintiff Ablaza did not receive the benefit of his bargain because Defendant's Product is not a "Max Strength" lidocaine product.

56.     Plaintiff Ablaza also understood that in making the sale, his retailer was acting with the knowledge and approval of Defendant and/or as the agent of Defendant.

57.     Plaintiff Ablaza would not have purchased the Defendant's Product if he had been aware that its "Max Strength" representations and omissions were not true, or alternatively, he would have paid less for this Product.

58.     Upon information and belief, excluding tax, the IcyHot Cream cost approximately $7.08 for a 2.7 ounce bottle and varies in price depending on the volume of the bottle.

***Plaintiff John Barone***

59.     Plaintiff Barone is a resident and citizen of Santa Rosa, California who purchased Defendant's IcyHot Patch on a recurring basis throughout the class period. He purchased the Product at national retailers, including online retailer Amazon.com. He last purchased the product on July 27, 2021 and paid approximately $8.88 before tax.

60.     Prior to purchasing Defendant's Product, Plaintiff Barone read and reviewed information about the Product, including the fact that the Product was being sold for personal use, and not resale.

61.     When purchasing his Product, Plaintiff Barone also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and omissions and warranties made by Defendant that the Product was a "Max Strength" lidocaine product. Plaintiff Barone relied on these representations, omissions and warranties in deciding to purchase Defendant's IcyHot Patch.

62.     Accordingly, these representations, omissions and warranties were part of the basis of the bargain, in that he would not have purchased the Product on the same terms had he known these representations were not true.

63.     Plaintiff Barone does, however, have an intention to purchase the Product in the future if the products are truthfully labeled and not misleadingly advertised.

64.     In making his purchases, Plaintiff Barone paid a substantial price premium due to the false and misleading "Max Strength" representations and omissions.

65.     However, Plaintiff Barone did not receive the benefit of his bargain because Defendant's Product is not a "Max Strength" lidocaine product.

66.     Plaintiff Barone also understood that in making the sale, his retailer was acting with

11

the knowledge and approval of Defendant and/or as the agent of Defendant.

67. Plaintiff Barone would not have purchased the Defendant's Product if he had been aware that its "Max Strength" representations and omissions were not true, or alternatively, he would have paid less for this Product.

68. Excluding tax, the IcyHot Patch products cost between $8.00 - $8.88 and vary in price depending on quantity of patches per box. The price that Plaintiff Barone paid, $8.88.

***Plaintiff Linda Cheslow***

69. Plaintiff Cheslow is a resident and citizen of Santa Rosa, California who purchased Defendant's IcyHot Patch on a recurring basis throughout the class period. She purchased the Product at national retailers, including online retailer Amazon.com. She last purchased the product on July 27, 2021 and paid approximately $8.88.

70. Prior to purchasing Defendant's Product, Plaintiff Cheslow read and reviewed information about the Product, including the fact that the Product was being sold for personal use, and not resale.

71. When purchasing her Product, Plaintiff Cheslow also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and omissions and warranties made by Defendant that the Product was a "Max Strength" lidocaine product. Plaintiff Cheslow relied on these representations, omissions and warranties in deciding to purchase Defendant's IcyHot Patch.

72. Accordingly, these representations, omissions and warranties were part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known these representations were not true.

73. However, Plaintiff Cheslow has an intention to purchase the Product in the future if the products are truthfully labeled and not misleadingly advertised.

74. In making her purchases, Plaintiff Cheslow paid a substantial price premium due to the false and misleading "Max Strength" representations and omissions.

75. However, Plaintiff Cheslow did not receive the benefit of her bargain because Defendant's Product is not a "Max Strength" lidocaine product.

76.     Plaintiff Cheslow also understood that in making the sale, her retailer was acting with the knowledge and approval of Defendant and/or as the agent of Defendant.

77.     Plaintiff Cheslow would not have purchased the Defendant's Product if she had been aware that its "Max Strength" representations and omissions were not true, or alternatively, she would have paid less for this Product.

78.     Excluding tax, the IcyHot Patch products cost between $8.00 - $8.88 and vary in price depending on quantity of patches per box. The price that Plaintiff Cheslow paid is $8.88.

***Plaintiff Betty Fellows***

79.     Plaintiff Fellows is a resident and citizen of Redwood City, California who purchased Defendant's Aspercreme Cream on a recurring basis throughout the class period. She purchased the Product at national retailers, including online retailer Amazon.com. She last purchased the product on September 3, 2020 and paid approximately $9.98 per unit.

80.     Prior to purchasing Defendant's Product, Plaintiff Fellows read and reviewed information about the Product.

81.     When purchasing her Product, Plaintiff Fellows reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and omissions and warranties made by Defendant that the Product was a "Max Strength" lidocaine product. Plaintiff Fellows relied on these representations, omissions and warranties in deciding to purchase Defendant's Aspercreme Cream.

82.     Accordingly, these representations, omissions and warranties were part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known these representations were not true.

83.     However, Plaintiff Fellows has an intention to purchase the Product in the future if the products are truthfully labeled and not misleadingly advertised.

84.     In making her purchases, Plaintiff Fellows paid a substantial price premium due to the false and misleading "Max Strength" representations and omissions.

85.     However, Plaintiff Fellows did not receive the benefit of her bargain because Defendant's Product is not a "Max Strength" lidocaine product.

86.     Plaintiff Fellows also understood that in making the sale, her retailer was acting with the knowledge and approval of Defendant and/or as the agent of Defendant.

87.     Plaintiff Fellows would not have purchased the Defendant's Product if she had been aware that its "Max Strength" representations and omissions were not true, or alternatively, she would have paid less for this Product.

88.     Excluding tax, the Aspercreme Cream products cost between $2.12 - $2.40 per ounce, and the total price may vary depending on the unit size. The price that Plaintiff Fellows paid, $9.98 for a 4.7 ounce product.

***Plaintiff Michael Falco***

89.     Plaintiff Falco is a resident and citizen of Long Island City, New York who purchased Defendant's Aspercreme Cream on at least one occasion throughout the class period. He purchased the Product at authorized local retailers, including a Nick's Pharmacy in Brooklyn, New York. He last purchased the product on June 25, 2021 and paid approximately $9.99.

90.     Prior to purchasing Defendant's Product, Plaintiff Falco read and reviewed information about the Product, including the fact that the Product was being sold for personal use, and not resale.

91.     When purchasing her Product, Plaintiff Falco also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and omissions and warranties made by Defendant that the Product was a "Max Strength" lidocaine product. Plaintiff Falco relied on these representations, omissions and warranties in deciding to purchase Defendant's Aspercreme Cream.

92.     Accordingly, these representations, omissions and warranties were part of the basis of the bargain, in that he would not have purchased the Product on the same terms had he known these representations were not true.

93.     However, Plaintiff Falco has an intention to purchase the Product in the future if the products are truthfully labeled and not misleadingly advertised.

94.     In making his purchases, Plaintiff Falco paid a substantial price premium due to the false and misleading "Max Strength" representations and omissions.

95.     However, Plaintiff Falco did not receive the benefit of his bargain because Defendant's

Product is not a "Max Strength" lidocaine product.

96.   Plaintiff Falco also understood that in making the sale, his retailer was acting with the knowledge and approval of Defendant and/or as the agent of Defendant.

97.   Plaintiff Falco would not have purchased the Defendant's Product if he had been aware that its "Max Strength" representations and omissions were not true, or alternatively, he would have paid less for this Product.

98.   Excluding tax, the Aspercreme Patches cost between $9.99 and $10.49, and vary in price depending on quantity of patches per box. The price that Plaintiff Falco paid, $9.99.

***Plaintiff Melissa Aldridge***

99.   Plaintiff Aldridge is a resident and citizen of Chicago, Illinois who purchased Defendant's Aspercreme Patch on at least one occasion throughout the class period. She purchased the Product at national retailers, including a Walgreens in Chicago. She last purchased the product on March 17, 2020 and paid approximately $10.49.

100.   Prior to purchasing Defendant's Product, Plaintiff Aldridge read and reviewed information about the Product.

101.   When purchasing the Product, Plaintiff Aldridge also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations, omissions, and warranties made by Defendant that the Product was a "Max Strength" lidocaine product. Plaintiff Aldridge relied on these representations, omissions and warranties in deciding to purchase Defendant's Aspercreme Patch.

102.   Accordingly, these representations, omissions and warranties were part of the basis of the bargain, in that she would not have purchased the Product on the same terms had she known these representations were not true.

103.   However, Plaintiff Aldridge has an intention to purchase the Product in the future if the products are truthfully labeled and not misleadingly advertised.

104.   In making her purchases, Plaintiff Aldridge paid a substantial price premium due to the false and misleading "Max Strength" representations and omissions.

105.   However, Plaintiff Aldridge did not receive the benefit of her bargain because

Defendant's Product is not a "Max Strength" lidocaine product.

106.    Plaintiff Aldridge also understood that in making the sale, her retailer was acting with the knowledge and approval of Defendant and/or as the agent of Defendant.

107.    Plaintiff Aldridge would not have purchased the Defendant's Product if she had been aware that its "Max Strength" representations and omissions were not true, or alternatively, she would have paid less for this Product.

108.    Excluding tax, the Asprecreme Patches cost between $9.99 and $10.49 and vary in price depending on quantity of patches per box. The price that Plaintiff Aldridge paid was $10.49.

***Plaintiff Lee Weinman***

109.    Plaintiff Weinman is a resident and citizen of Chicago, Illinois who purchased Defendant's IcyHot Patch on at least one occasion throughout the class period. He purchased the Product at national retailers, including Walgreens and Target as well as Jewel Foods in and around Chicago, Illinois. He last purchased the product on in February 2021 and paid approximately $8.00.

110.    Prior to purchasing Defendant's Product, Plaintiff Weinman read and reviewed information about the Product, including the fact that the Product was being sold for personal use, and not resale.

111.    When purchasing his Product, Plaintiff Weinman also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and omissions and warranties made by Defendant that the Product was a "Max Strength" lidocaine product. Plaintiff Weinman relied on these representations, omissions and warranties in deciding to purchase Defendant's IcyHot Patch.

112.    Accordingly, these representations, omissions and warranties were part of the basis of the bargain, in that he would not have purchased the Product on the same terms had he known these representations were not true.

113.    However, Plaintiff Weinman has an intention to purchase the Product in the future if the products are truthfully labeled and not misleadingly advertised.

114.    In making his purchases, Plaintiff Weinman paid a substantial price premium due to the false and misleading "Max Strength" representations and omissions.

115.    However, Plaintiff Weinman did not receive the benefit of his bargain because Defendant's Product is not a "Max Strength" lidocaine product.

116.    Plaintiff Weinman also understood that in making the sale, his retailer was acting with the knowledge and approval of Defendant and/or as the agent of Defendant.

117.    Plaintiff Weinman would not have purchased the Defendant's Product if he had been aware that its "Max Strength" representations and omissions were not true, or alternatively, he would have paid less for this Product.

118.    Excluding tax, the IcyHot Patch products cost between $8.00 - $8.88 and vary in price depending on quantity of patches per box. The price that Plaintiff Weinman paid was $8.00.

## FED. R. CIV. P. 9(b) ALLEGATIONS

119.    Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity.

120.    **WHO:** Defendant, Sanofi-Aventis U.S., LLC., made material misrepresentations and/or omissions of fact in its labeling and marketing of the Products by representing that the Products are "Max Strength" lidocaine products.

121.    **WHAT:** Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are "Max Strength" lidocaine products. Defendant omitted from Plaintiffs and Class Members that the Products are not "Max Strength" lidocaine products because other lidocaine products exist in the market that contain a higher amount (i.e. 5%) of lidocaine. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has and continues to represent that the Products are "Max Strength" lidocaine products when they are not.

122.    **WHEN:** Defendants made material misrepresentations and/or omissions detailed herein, including that the Products are "Max Strength" lidocaine products, continuously throughout the applicable Class period(s).

123.    **WHERE:** Defendant's material misrepresentations and omissions, that the Products

are "Max Strength" lidocaine products were made on the front labeling and packaging of the Products and throughout Defendant's advertising. Defendant's representations are written with bold lettering with yellow highlight in the case of the IcyHot Cream and the IcyHot Patch, and are written with bold lettering against a contrasting blue highlight in the case of the Aspercreme Cream and the Aspercreme Patch – both of which instantly catch the eye of all reasonable consumers, including Plaintiffs, at the point of sale in every transaction. The Products are sold in brick and mortar and online retailers nationwide.

124. **HOW:** Defendant made written misrepresentations right on the front label of the Products that the Products were "Max Strength" lidocaine products even though other stronger lidocaine products are available in the market. As such, Defendant's "Max Strength" representations are false and misleading. And as discussed in detail throughout this Second Amended Complaint, Plaintiffs and Class Members read and relied on Defendant's "Max Strength" representations and omissions before purchasing the Products.

125. **WHY:** Defendant misrepresented its Products as being "Max Strength" lidocaine products for the express purpose of inducing Plaintiffs and Class Members to purchase the Products at a substantial price premium. Given that Defendant is a large scale and sophisticated pharmaceutical company with somewhere between 5000-10,000 employees[11] and the fact that it manufacturers both over the counter and prescription products,[12]   Plaintiffs allege that Defendant knew that there were higher strength lidocaine products available than the ones it was selling as "Max Strength". Defendant purposely marketed the Products as "Max Strength."  in order to gain a competitive advantage on the makers of other lidocaine patches. Accordingly, by marketing its Product as "Max Strength," when the Products were not, Defendant intended consumers, including Plaintiffs and the Class, into being fraudulently induced into purchasing the Products.  Indeed, the amount of space of a product's label is limited and by making the choice to include the "Max Strength" in such a prominent and conspicuous position, it is clear that Defendant intended consumers to rely on the challenged representation.

[11] https://www.linkedin.com/company/sanofi-aventis-u.s.-llc
[12] https://www.sanofi.us/en/products-and-resources/prescription-products and
https://www.sanofi.us/en/products-and-resources/OTC-products

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CLASS ACTION ALLEGATIONS

127.126.     Pursuant to Fed. R. Civ. P. 23, Plaintiffs bring this action on behalf of themselves and the members of the follow class (the "Nationwide Class"):

> All persons residing in the United States who, during the maximum period of time permitted by law, purchased the Products primarily for personal, family or household purposes, and not for resale.

128.127.     Plaintiffs Ablaza, Barone, Cheslow, and Fellows also bring this action on behalf of themselves and the members of the following subclass (the "California Subclass"):

> All persons residing in California who, during the maximum period of time permitted by law, purchased the Products primarily for personal, family or household purposes, and not for resale.

129.128.     Plaintiff Falco also brings this action on behalf of himself and the members of the following subclass (the "New York Subclass"):

> All persons residing in New York who, during the maximum period of time permitted by law, purchased the Products primarily for personal, family or household purposes, and not for resale.

130.129.     Plaintiffs Aldridge and Weinman also bring this action on behalf of themselves and the members of the following subclass (the "Illinois Subclass"):

> All persons residing in Illinois who, during the maximum period of time permitted by law, purchased the Products primarily for personal, family or household purposes, and not for resale.

131.130.     Plaintiffs reserve the right to amend the Class definition or Subclass definitions at a later date as necessary to conform with facts learned through discovery.

132.131.     Specifically excluded from the Class and Subclass definitions are (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

133.132.     As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and all Subclasses, including Plaintiffs Ablaza. Barone, Cheslow, Fellows, Falco, Aldridge, and Weinman.

134.133.     Plaintiffs seek only damages and equitable relief on behalf of themselves and

the Class Members. Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by themselves and/or the Class Members.

135.134.    Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable. On information and belief, members of the Class number in at least the thousands. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

136.135.    Typicality: The claims of the representative Plaintiffs are typical in that Plaintiffs, like all Class Members, purchased one of the Products that were marketed, distributed, and/or sold by Defendant. Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that, *inter alia*, they purchased at least one of the Products that were represented as being a "Max Strength" lidocaine product when that representation is false and misleading. Furthermore, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to Plaintiffs and all Class Members.

137.136.    Commonality: There are numerous questions of law and fact common to Plaintiffs and Class Members that predominate over any individual questions. These common legal and factual issues include the following:

    a.  Whether Defendant's "Max Strength" representations and/or omissions regarding the Products are false and/or misleading;

    b.  Whether Defendant knowingly sold its Products which it knew did not contain maximum (or max) strength lidocaine;

    c.  Whether Defendant engaged in false and/or deceptive advertising;

    d.  Whether Plaintiffs and the Class Members did not receive the benefit of their bargain when purchasing the Products;

    e.  Whether Defendant was unjustly enriched by consumers paying a price premium for less than "Max Strength" lidocaine products;

    f.  Whether Defendant's actions as described above violated the various state consumer protection laws as alleged herein;

    g.  Whether Defendant has breached express and implied warranties in the sale and

marketing of the Products;

h.   Whether Plaintiffs and Class Members have sustained monetary loss and the proper remedy for and measure of that loss;

i.   Whether Defendant's conduct violated public policy; and

j.   Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, and pay damages as a result of the above-described practices.

138.137.    Adequate Representation: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including mislabeled consumer product goods, and Plaintiffs intend to prosecute this action vigorously.

139.138.    Predominance and Superiority: Plaintiffs and Class Members have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law. Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct. Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

140.139.    In addition, Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive equitable relief with respect to the Class as a whole. In addition, Plaintiffs have an intention to purchase the Products in the future if the Products are truthfully and not misleadingly labeled.

**CAUSES OF ACTION**

**COUNT I**
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of All Plaintiffs and the Nationwide Class, or Alternatively, the California, New York, and Illinois Subclasses)**

141.140.    Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully

21

set forth herein.

~~142.~~141.    Plaintiffs Richie Ablaza, John Barone, Linda Cheslow, Betty Fellows, Michael Falco, Melissa Aldridge, and Lee Weinman bring this count on behalf of themselves, the proposed Nationwide Class, California Subclass, New York Subclass, and Illinois Subclass against Defendant.

~~143.~~142.    Express warranties by sellers of consumer goods are created when an affirmation of fact or promise is made by the seller to the buyer, which relates to the goods and becomes the basis of the bargain. Such warranties can also be created based upon descriptions of the goods which are made as part of the basis of the bargain that the goods shall conform to the description. *See*, *e.g.*, Cal. Com. Code § 2313(1)(a)-(b); N.Y. U.C.C. Law § 2- 313(1)(a)-(b); and 810 ICLS 5/2-313(1)(a)-(b).

~~144.~~143.    Defendant, as the marketer, distributor and/or seller, expressly warranted that the Products were "Max Strength" lidocaine products.

~~145.~~144.    Each of the Plaintiffs formed a contract with Defendant at the time they purchased the Products. The terms of that contract include the promises and affirmations of fact that Defendant makes through an extensive, uniform, nationwide marketing campaign, and on its product labels. Among other affirmations of fact and promises described herein, Defendant represents that the Products are "Max Strength" lidocaine products.

~~146.~~145.    Defendant's express warranties, and its affirmations of fact and promises made to Plaintiffs and Class Members regarding the Products became the basis of the bargain between Defendant and Plaintiffs and the Classes, thereby creating an express warranty that the Products would conform to those affirmations of fact, representations, promises, and descriptions.

~~147.~~146.    Contrary to Defendant's affirmations of fact and promises, the Products are not "Max Strength" lidocaine products. Defendant breached the express warranties and/or contract obligations by placing the Products into the stream of commerce and selling the Products to consumers, when the Products are not "Max Strength" lidocaine products, because other comparable lidocaine products exist in the market that contain more lidocaine than Defendant's products.

~~148.~~147.    As such, Defendant's Products do not conform to the express warranties because the representations are false or misleading.

149.148.    At all times relevant herein, Defendant was aware, or should have been aware, of the misrepresentations regarding the Products.

150.149.    Defendant made the "Max Strength" representation with the intention that Plaintiffs and Class members would rely on the "Max Strength" representation. Plaintiffs and Class members did, in fact, rely on Defendant's "Max Strength" representation when deciding to purchase the Products.

151.150.    Where required, Defendant's affirmations of fact and promises were material to Plaintiffs and Class Members decisions to purchase the Products.

152.151.    All conditions precedent to Defendant's liability for its breach of express warranty have been performed by Plaintiffs or Class Members.

153.152.    Defendant received direct electronically mailed notice from Plaintiffs' counsel related to the claims at issue in this Second Amended Complaint, and specifically Defendant's breaches of its warranties. Specifically, as early as March 19, 2021, the original Complaint filed in this matter operated as sufficient notice to Defendant to inform it of its breaches of express warranties. Moreover, Plaintiffs' counsel served via e-mail Defendant's counsel with pre-suit notice of its breaches of warranties on behalf of Plaintiffs and Class Members: on July 27, 2021 by Plaintiff Ablaza; on August 18, 2021 by Plaintiffs Barone, Cheslow, Fellows, Falco, and Aldridge; and on September 9, 2021 by Plaintiff Weinman.

154.153.    Defendant's counsel acknowledged receipt of Plaintiff Ablaza's and Plaintiffs Barone, Cheslow, Fellows, Falco, and Aldridge's pre-suit notice letters by responding to Plaintiffs' counsel's email(s) regarding service of the pre-suit notice letters. Defendant did not acknowledge receipt of Plaintiff Weinman's letter nor respond to a request for acknowledgement or for preference of alternative service.

155.154.    Defendant also has notice of the conduct related to its breach of warranties by way of the lawsuit that was filed: *Scilex Pharmaceuticals, Inc. v. Sanofi-Aventis U.S. LLC, et al.*, 4:21-cv-01280 (N.D. Cal.) (filed on February 23, 2021).

156.155.    As a direct and proximate result of Defendant's breaches of express warranty, Plaintiffs and Class Members have been damaged because they did not receive the Products as

specifically warranted by Defendant. Plaintiffs and Class Members did not receive the benefit of the bargain and suffered damages by purchasing the misrepresented Products.

## COUNT II
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
**(On Behalf of Plaintiffs Ablaza, Barone, Cheslow, Fellows and the California Subclass)**

~~157.~~156.    Plaintiffs Ablaza, Barone, Cheslow, and Fellows repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

~~158.~~157.    Plaintiffs Ablaza, Barone, Cheslow, and Fellows bring this count on behalf of themselves, the proposed California Subclass.

~~159.~~158.    California  has adopted UCC § 2-314, which states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." *See* Cal. Comm. Code § 2314.  Specifically, under Cal. Comm. Code § 2314(2), the implied warranty of merchantable requires that products, "[p]ass without objection in the trade under the contract description," "[i]n the case of fungible goods, are of fair average quality within the description" and "[c]onform to the promises or affirmations of fact made on the container or label if any."  Accordingly, Plaintiff brings this action for violation of Cal. Comm. Code § 2314(2)(a), (b), and (f).  Put differently, the Product's must conform to any description on its label.

~~160.~~159.    Defendant, through its acts and omissions set forth herein, in the sale, marketing, and promotion of the Products, made representations and omissions to Plaintiffs and the Class that, among other things, the Products were labeled as being "Max Strength" lidocaine products.

~~161.~~160.    Plaintiffs and the Class bought the Products manufactured, advertised, and sold by Defendant, as described herein.

~~162.~~161.    Defendants are merchants with respect to the goods of this kind which were sold to Plaintiffs and the Class, and there was, in the sale to Plaintiffs and other consumers, an implied warranty that those goods were merchantable.

~~163.~~162.    However, Defendant breached that implied warranty (particularly UCC § 2-314(2)(b) and (f)) in that the Products are inaccurately labeled as being "Max Strength" lidocaine products.

~~164.~~163.    At all times relevant herein, Defendant was aware, or should have been aware,

24

of the implied warranties regarding the Products.

165.164.    Defendant made the "Max Strength" representations and omissions with the intention that Plaintiffs and Class Members would rely on the "Max Strength" representations and omissions. Plaintiffs and Class Members did, in fact, rely on Defendant's "Max Strength" representations and omissions when deciding to purchase the Products.

166.165.    Where required, Defendant's implied warranties were material to Plaintiffs and Class Members decisions to purchase the Products.

167.166.    All conditions precedent to Defendant's liability for its breach of implied warranties have been performed by Plaintiffs and Class Members.

168.167.    Defendant received direct electronically mailed notice from Plaintiffs related to the claims at issue in this Second Amended Complaint, and specifically Defendant's breaches of its implied warranties. Specifically, as early as March 19, 2021, the original Complaint filed in this matter operated as sufficient notice to Defendant to inform it of its breaches of implied warranties. Moreover, Plaintiffs' counsel served via e-mail Defendant's counsel with pre-suit notice of its breaches of warranties on behalf of Plaintiffs and Class Members: on July 27, 2021 by Plaintiff Ablaza; on August 18, 2021 by Plaintiffs Barone, Cheslow, Fellows, Falco, and Aldridge; and on September 9, 2021 by Plaintiff Weinman.

169.168.    Defendant's counsel acknowledged receipt of Plaintiff Ablaza's and Plaintiffs Barone, Cheslow, Fellows, Falco, and Aldridge's pre-suit notice letters by responding to Plaintiffs' counsel's email(s) regarding service of the pre-suit notice letters. Defendant did not acknowledge receipt of Plaintiff Weinman's letter nor respond to a request for acknowledgement or for preference of alternative service.

170.169.    Defendant also has notice of the conduct related to its breach of implied warranties by way of the lawsuit that was filed: *Scilex Pharmaceuticals, Inc. v. Sanofi-Aventis U.S. LLC, et al.*, 4:21-cv-01280 (N.D. Cal.) (filed on February 23, 2021).

171.170.    As an actual and proximate result of Defendant's conduct, Plaintiffs and the Class did not receive goods as impliedly warranted by Defendant to be merchantable in that they did not conform to promises and affirmations made on the container or label of the goods.

172.171.    Plaintiffs and the Class have sustained damages as a proximate result of the foregoing breach of implied warranties in the amount, *inter alia*, of the Products' purchase prices.

**COUNT III**
**VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW**
**Cal. Bus. & Prof. Code § 17500 ("FAL")**
**(On Behalf of Plaintiffs Ablaza, Barone, Cheslow, Fellows and the California Subclass)**

173.172.    Plaintiffs Ablaza, Barone, Cheslow, and Fellows repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

174.173.    Plaintiffs Ablaza, Barone, Cheslow, and Fellows bring this count on behalf of themselves and the California Subclass against Defendant.

175.174.    The FAL provides that "[i]t is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property or to perform services" to disseminate any statement "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

176.175.    It is also unlawful under the FAL to disseminate statements concerning property or services that are "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.*

177.176.    As alleged herein, the advertisements, labeling, policies, acts, and practices of Defendant relating to its "Max Strength" representations and omissions on the Products' labeling and advertising misled consumers acting reasonably.

178.177.    Plaintiffs Ablaza, Barone, Cheslow, Fellows, and California Subclass Members suffered injuries in fact as a result of Defendant's actions as set forth herein because they purchased Defendant's Products in reliance on Defendant's false and misleading "Max Strength" lidocaine labeling claims as alleged herein.

179.178.    Defendant's business practices as alleged herein constitute deceptive, untrue, and misleading advertising pursuant to the FAL because Defendant has advertised the Products in a manner that is untrue and misleading, which Defendant knew or reasonably should have known, and omitted material information from its advertising.

180.179.    Defendant profited from its sale of the falsely and deceptively advertised

26

Products to unwary consumers.

181.180.    Plaintiffs Ablaza, Barone, Cheslow, Fellows, and the California Subclass were damaged because they would not have purchased (or paid a premium) for Defendant's Products had they known the true facts regarding the "Max Strength" lidocaine representations contained on the front label of the Products.

182.181.    Plaintiffs Ablaza, Barone, Cheslow, Fellows, and the California Subclass do not have an adequate remedy at law because damages alone will not stop Defendant's unlawful labeling of its "Max Strength" Products.  Damages will only address past injuries visited on Plaintiffs Ablaza, Barone, Cheslow, Fellows, and the California Subclass.  Only injunctive relief can prevent any future harm.  Additionally, legal damages may not be available to Plaintiffs given Defendant's arguments against Plaintiffs' legal claims, as asserted in its Motion to Dismiss Plaintiffs' First Amended Complaint.  Indeed, restitution under the FAL can be award in situations where the entitlement to damages may prove difficult.  *Cortez v. Purolator Air Filtration Products Co.,* 23 Cal.4th 163, 177  (2000) (Restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."); *Gutierrez v. Wells Fargo Bank*, NA, 589 F. App'x 824, 827 (9th Cir. 2014) (same); *In re Steroid Hormone Prod.,* 181 Cal.App.4th 145, 156-57  *Cases* (2010) (Plaintiff was entitled to show that defendant's deceptive conduct causes damages uniform to the class even if some class members would have purchased the products in question if they were aware of defendant's business practices.); *Caro v. Procter & Gamble Co.*, 18 Cal. App. 4th 644, 661 (1993) ("'In a suit arising under Business and Professions Code section 17200 et seq., the court "is empowered to grant equitable relief, including restitution in favor of absent persons, without certifying a class action.").

183.182.    But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiffs Ablaza, Barone, Cheslow, Fellows, and the California Subclass.  Unlike damages, the Court's discretion in fashioning equitable relief is very broad.  *Cortez,* 23 Cal.4th at 180.  Thus, restitution would allow recovery even when normal consideration associated with damages would not.  *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68

(2007), *as modified* (Apr. 24, 2007) (noting that restitution is available even in situations where damages may not be available).

~~184.~~183.    As a result, Plaintiffs Ablaza, Barone, Cheslow, Fellows, and the California Subclass are entitled to equitable relief, injunction, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

**COUNT IV**
**VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL")**
**(On Behalf of Plaintiffs Ablaza, Barone, Cheslow, Fellows, and the California Subclass)**

~~185.~~184.    Plaintiffs Ablaza, Barone, Cheslow, and Fellows repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

~~186.~~185.    Plaintiffs Ablaza, Barone, Cheslow, and Fellows bring this count on behalf of themselves and the California Subclass against Defendant.

~~187.~~186.    Defendant is subject to the Unfair Competition Law ("UCL"), Business & Professions Code §§ 17200, et seq. The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

~~188.~~187.    Defendant violated the "unlawful" prong of the UCL by violating California's False Advertising Law ("FAL") as described in Count III, *supra*.

~~189.~~188.    Defendant's conduct, described herein, violated the "unfair" prong of the UCL because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

~~190.~~189.    Defendant's conduct with respect to the labeling, advertising, and sale of the Products was unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the applicable sections of the FAL.

~~191.~~190.    Defendant's conduct with respect to the labeling, advertising, and sale of the Products was unfair because the consumer injury was substantial, not outweighed by benefits to consumers or competition, and not one consumer themselves could reasonably have avoided.

~~192.~~191.    Defendant's conduct, described herein, violated the "fraudulent" prong of the UCL.

193.192.     A statement or practice is "fraudulent" under the UCL if it is likely to mislead or deceive the public, applying an objective reasonable consumer test. As set forth herein, Defendant's "Max Strength" lidocaine claims contained on the Products' front labeling were false and are likely to mislead or deceive the public.

194.193.     Moreover, Defendant omitted from the Products' labeling the fact that there are other prescription products available in the market that contain a higher percentage of lidocaine (i.e. 5%) and therefore this conduct was false and misleading and "fraudulent" under the UCL.

195.194.     Defendant profited from its sale of the falsely, deceptively, and unlawfully advertised and packaged Products to unwary consumers.

196.195.     Defendant's conduct caused substantial injury to Plaintiffs Ablaza, Barone, Cheslow, Fellows, and the other California Subclass Members. Plaintiffs Ablaza, Barone, Cheslow, and Fellows have suffered injury in fact as a result of Defendant's unlawful conduct. Plaintiffs Ablaza, Barone, Cheslow, Fellows, and California Subclass Members were damaged because they would not have purchased (or paid a premium) for Defendant's Products had they known the true facts regarding Defendant's "Max Strength" representations.

197.196.     Plaintiffs Ablaza, Barone, Cheslow, Fellows, and the California Subclass do not have an adequate remedy at law because damages alone will not stop Defendant's unlawful labeling of its "Max Strength" Products.  Damages will only address past injuries inflicted on Plaintiffs Ablaza, Barone, Cheslow, Fellows, and the California Subclass.  Only injunctive relief can prevent any future harm.  Additionally, legal damages may not be available to Plaintiffs Ablaza, Barone, Cheslow, Fellows, and the California Subclass given Defendant's arguments against Plaintiffs' legal claims, as asserted in its Motion to Dismiss Plaintiffs' First Amended Complaint, and Defendant's likely challenges to Class Certification.  Indeed, restitution under the UCL can be awarded in situations where the entitlement to damages may prove difficult.  *Cortez,* 23 Cal.4th at 177 (Restitution under the UCL can be awarded "even absent individualized proof that the claimant lacked knowledge of the overcharge when the transaction occurred."); *Gutierrez*, 589 F. App'x at 827 (same); *Caro*, 18 Cal. App. 4th at 661 ("In a suit arising under Business and Professions Code section 17200 *et seq.*, the

court 'is empowered to grant equitable relief, including restitution in favor of absent persons, without certifying a class action.'").

~~198.~~197.     But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiffs Ablaza, Barone, Cheslow, Fellows, and the California Subclass.  Unlike damages, the Court's discretion in fashioning equitable relief is very broad.  *Cortez*, 23 Cal.4th at 180.  Thus, restitution would allow recovery even when normal consideration associated with damages would not.  *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007), *as modified* (Apr. 24, 2007) (noting that restitution is available even in situations where damages may not be available).

~~199.~~198.     As a result, Plaintiffs Ablaza, Barone, Cheslow, Fellows, and the California Subclass are entitled to equitable relief, injunction, restitution, and an order for the disgorgement of the funds by which Defendant was unjustly enriched.

## COUNT V
## VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT
### Cal. Civ. Code § 1750 et seq. ("CLRA")
**(On Behalf of Plaintiffs Ablaza, Barone, Cheslow, Fellows, and the California Subclass)**

~~200.~~199.     Plaintiffs Ablaza, Barone, Cheslow, and Fellows repeat and re-alleges all proceeding factual allegations above as if fully set forth herein.

~~201.~~200.     Plaintiffs Ablaza, Barone, Cheslow, and Fellows bring this count on behalf of themselves and the California Subclass against Defendant.

~~202.~~201.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

~~203.~~202.     Defendant's false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of the Products for personal, family, or household purposes by Plaintiffs Ablaza, Barone, Cheslow, Fellows, and California Subclass Members, and violated and continues to violate the following sections of the CLRA:

a. § 1770(a)(5): representing that goods have characteristics, uses, or

benefits which they do not have;

b. § 1770(a)(7): representing that goods are of a particular standard,

quality, or grade if they are of another;

  c. § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

  d. § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

204.203. Defendant profited from the sale of the falsely, deceptively, and unlawfully advertised Products to unwary consumers.

205.204. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA.

206.205. Plaintiffs Ablaza, Barone, Cheslow, Fellows, and the California Subclass do not have an adequate remedy at law because damages alone will not stop Defendant's unlawful labeling of its "Max Strength" Products.  Damages will only address past injuries inflicted on Plaintiffs Ablaza, Barone, Cheslow, Fellows, and the California Subclass.  Only injunctive relief can prevent any future harm.  Additionally, legal damages may not be available to Plaintiffs Ablaza, Barone, Cheslow, Fellows, and the California Subclass given Defendant's arguments against Plaintiffs' legal claims, as asserted in its Motion to Dismiss Plaintiffs' First Amended Complaint, and Defendant's likely challenges to Class Certification.

207.206. But even if damages were available, such relief would not be adequate to address the injury suffered by Plaintiffs Ablaza, Barone, Cheslow, Fellows, and the California Subclass.  Unlike damages, the Court's discretion in fashioning equitable relief is very broad.  *Cortez,* 23 Cal.4th at 180.  Thus, restitution would allow recovery even when normal consideration associated with damages would not.  *See, e.g., Fladeboe v. Am. Isuzu Motors Inc.*, 150 Cal. App. 4th 42, 68 (2007), *as modified* (Apr. 24, 2007) (noting that restitution is available even in situations where damages may not be available).

208.207. On July 27, 2021, Plaintiff Ablaza, on behalf of himself and all California Subclass Members sent a Consumer Legal Remedies Notice letter via email, pursuant to Cal. Civ. Code § 1782, to counsel for Defendant, who represented that service upon Defendant via email was acceptable.

209.208.     On August 18, 2021, Plaintiffs Barone, Cheslow, and Fellows, on behalf of themselves and all California Subclass Members sent a Consumer Legal Remedies Notice letter via email, pursuant to Cal. Civ. Code § 1782, to counsel for Defendant, who represented that service upon Defendant via email was acceptable.

210.209.     Defendant also has notice of the conduct related to its violation of the CLRA by way of the lawsuit that was filed: *Scilex Pharmaceuticals, Inc. v. Sanofi- Aventis U.S. LLC, et al.*, 4:21-cv-01280 (N.D. Cal.) (filed on February 23, 2021).

211.210.     Pursuant to California Civil Code § 1780, Plaintiffs Ablaza, Barone, Cheslow, and Fellows, on behalf of themselves and the California Subclass Members, seek injunctive relief, reasonable attorney fees and costs, restitution, damages, and any other relief that the Court deems proper.

**COUNT VI**
**VIOLATIONS OF THE NEW YORK**
**DECEPTIVE TRADE PRACTICES ACT**
**New York Gen. Bus. Law § 349, *et seq.* ("GBL")**
**(On Behalf of Plaintiff Falco and the New York Subclass)**

212.211.     Plaintiff Falco repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

213.212.     Plaintiff Falco brings this count on behalf of himself and the New York Class against Defendant.

214.213.     The New York Deceptive Acts and Practices Act makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 349.

215.214.     Defendant engaged in deceptive acts or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, as described herein.

216.215.     Defendant's foregoing acts and practices, were directed at consumers.

217.216.     Defendant's representations were material, in part, because they concerned an essential part of the Products' composition and also because they were likely to deceive reasonable consumers.

218.217.     Defendant's foregoing deceptive acts and practices, including its omissions,

were and are deceptive acts or practices in violation of New York's General Business Law section 349, Deceptive Acts and Practices, N.Y. Gen. Bus. Law 349, *et. seq.*, in that:

- Defendant represented to Plaintiff Falco and New York Subclass Members that the Products had approval or characteristics that they did not have;

- Defendant represented to Plaintiff Falco and New York Subclass Members that the Products were of a particular standard, quality, or grade when it was actually of another;

- Defendant advertised to Plaintiff Falco and New York Subclass Members goods with intent not to sell them as advertised;

- Defendant engaged in other fraudulent or deceptive conduct creating a likelihood of confusion or misunderstanding; and

- Defendant represented that consumers' purchases of the Products conferred or involved rights that the transactions did not have or involve.

219.218.    Plaintiff Falco and New York Subclass Members suffered damages when they purchased the Products. Defendant's unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiff Falco and New York Subclass Members.

220.219.    Defendant's foregoing deceptive acts and practices were  likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

221.220.    Plaintiff Falco reserves the right to allege other violations of the law, which constitute other unlawful business acts and practices. As alleged herein, Defendant continues to misrepresent the Products' abilities and continues to represent that the Products are "Max Strength" lidocaine products. Further, Defendant has not provided any remedial efforts to Plaintiff Falco and New York Subclass Members, and Defendant's conduct is ongoing and continues to this date.

222.221.    Defendant recklessly disregarded Plaintiff Falco's and New York Subclass Members' rights.

223.222.    Defendant's knowledge of the Products' deceptive claims put it on notice that Defendant's Products were not as it advertised.

224.223.    In accordance with subsection (h) of section 349, Plaintiff Falco seeks an order enjoining Defendant from continuing these unlawful deceptive acts and practices. Absent enjoining

these unlawful deceptive acts and practices, Defendant will continue its false and misleading marketing of the Products and, in doing so, irreparably harm Plaintiff Falco and each of the New York Subclass Members.

225.224.     As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiff Falco and the New York Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing the Products.

226.225.     By reason of the foregoing, Plaintiff Falco and the New York Subclass Members also seek actual damages or statutory damages of $50 per violation, whichever is greater, as well as punitive damages. N.Y. Gen. Bus. Law § 349(h).

**COUNT VII**
**VIOLATIONS OF THE NEW YORK**
**DECEPTIVE SALES PRACTICE ACT**
**New York Gen. Bus. Law § 350, *et seq.* ("GBL")**
**(On Behalf of Plaintiff Falco and the New York Subclass)**

227.226.     Plaintiff Falco repeats and re-alleges all proceeding factual allegations above as if fully set forth herein.

228.227.     Plaintiff Falco brings this count on behalf of himself and the New York Subclass against Defendant for violation of New York General Business Law § 350.

229.228.     Section 350 prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. Gen. Bus. Law § 350.

230.229.     New York General Business Law § 350-a defines "false advertising" as "advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect." N.Y. Gen. Bus. Law § 350-a.

231.230.     Defendant's labeling, marketing, and advertising of the Products, as alleged herein, are "misleading in a material respect," and are thus "false advertising." As described herein, Defendant repeatedly advertised, both on the Products' labels and through a national advertising campaign, *inter alia*, that the Products were "Max Strength" lidocaine products.

232.231.     As alleged herein, contrary to its representations, the Products are not "Max

Strength" lidocaine products. Despite being advertised as "Max Strength" lidocaine products, comparable lidocaine products exist in the marketplace that contain more lidocaine than Defendant's Products.

233.232.      Defendant had exclusive knowledge of material facts concerning the deceptive nature of the labeling and marketing of the Products.

234.233.      Defendant's conduct caused and continues to cause injury to consumers, including Plaintiff Falco and New York Subclass Members, in that they were misled to believe that they were purchasing "Max Strength" lidocaine products.

235.234.      In making and disseminating the false labeling and statements alleged herein, Defendant knew, or should have known, that its practices were materially deceptive and misleading in violation of N.Y. Gen. Bus. Law § 350, *et seq*.

236.235.      Plaintiff Falco and the New York Subclass Members based their decision to purchase the Products in substantial part on Defendant's labeling, advertisements, material representations. The revenue to Defendant attributable to the sale of the Products likely amounts to millions of dollars.

237.236.      Based on all the foregoing, Defendant has violated New York General Business Law § 350, causing Plaintiff Falco and the New York Subclass Members to sustain injury in fact – the loss of monies paid for the Products.

238.237.      The misrepresentations by Defendant of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute violations of N.Y. Gen. Bus. Law § 350, *et seq*.

239.238.      Plaintiff Falco seeks an order enjoining Defendant from continuing this false advertising. Absent enjoining this false advertising, Defendant will continue to mislead Plaintiff Falco and the New York Subclass Members and, in doing so, irreparably harm each of the New York Subclass Members.

240.239.      As a direct and proximate result of Defendant's violation of New York General Business Law § 350, Plaintiff Falco and the New York Subclass Members have also suffered an ascertainable loss of monies. By reason of the foregoing, Plaintiff Falco and the New York Subclass

Members also seek actual damages or statutory damages of $500 per violation, whichever is greater, as well as punitive damages. N.Y. Gen. Bus. Law § 350-e (3).

**COUNT VIII**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT**
**815 ILCS 505/1, *et seq*. ("ICFA")**
**(On Behalf of Plaintiffs Aldridge, Weinman, and the Illinois Subclass)**

241.240.     Plaintiffs Aldridge and Weinman repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

242.241.     Plaintiffs Aldridge and Weinman bring this count on behalf of themselves and the Illinois Subclass against Defendant for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq*.

243.242.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq*., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce. The ICFA is to be liberally construed to effectuate its purpose.

244.243.     Plaintiffs Aldridge and Weinman and other members of the Illinois Subclass, as purchasers of the Products, are consumers within the meaning of the ICFA given that Defendant's business activities involve trade or commerce, are addressed to the market generally and otherwise implicate consumer protection concerns.

245.244.     Defendant's conduct in misrepresenting the benefits of its Products as being "Max Strength" constitute the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

246.245.     Defendant also knowingly made material misrepresentations to Plaintiffs Aldridge and Weinman and other members of the Illinois Subclass knowing that consumers would rely on the advertisements and packaging and Defendant's uniform representations to purchase the Products, even though they were not "Max Strength" as represented.

247.246.     Defendant intended that Plaintiffs Aldridge and Weinman and the Illinois Subclass members would rely on the continued deception by purchasing the Products, unaware of the material facts described above. Defendant knew that its customers would continue to rely on its representations that the Products were "Max Strength" lidocaine products in purchasing the Products.

This conduct constitutes consumer fraud within the meaning of the ICFA.

248.247.    Defendant's material misrepresentation set forth above constitutes an unconscionable commercial practice, deception, fraud, false promise, misrepresentation and/or omission of material facts as to the nature of the goods, in violation of the ICFA.

249.248.    Plaintiffs Aldridge and Weinman and the other members of the Illinois Subclass suffered damages as a proximate result of the unfair acts or practices of Defendant alleged herein. Defendant's misrepresentations were done knowingly, intentionally, willfully or with reckless disregard for the consequences of its actions.

250.249.    Plaintiffs Aldridge and Weinman and other members of the Illinois Subclass would not have purchased the Products (or would have paid less for the Products) but for the promised benefits and concealment of any risk of harm because the Products as sold had no intrinsic value to them.

251.250.    Defendant knowingly accepted the benefits of its deception and improper conduct in the form of profits from the increased sale of the Products.

252.251.    As a proximate result of the above-described violations of the ICFA, Plaintiffs Aldridge and Weinman and other members of the Illinois Subclass: (a) purchased and used the Products when they would not otherwise have done so; and (b) suffered economic losses consisting of the cost of purchasing the Products.

253.252.    Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

254.253.    Plaintiffs Aldridge and Weinman also seek to enjoin Defendant's ongoing deceptive practices relating to their claims on the Products' labels and advertising.

## COUNT IX
## VIOLATION OF THE ILLINOIS UNIFORM
## DECEPTIVE TRADE PRACTICES ACT
### 815 ILCS §§ 510/2, *et seq.*
### (On Behalf of Plaintiffs Aldridge, Weinman, and the Illinois Subclass)

255.254.    Plaintiffs Aldridge and Weinman repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

256.255.    Plaintiffs Aldridge and Weinman bring this claim on behalf of themselves and

the Illinois Subclass against Defendant for violations of the Illinois Uniform Deceptive Trade Practices Act, ILCS §§ 510/2, *et seq.*

257.256.        Defendant constitutes a "person" as defined by 815 ILCS §§ 510/1(5).

258.257.        Defendant engaged in deceptive trade practices in the conduct of its business, in violation of 815 ILCS §§ 510/2(a), including:

- Defendant represented to Plaintiffs Aldridge and Weinman and the Illinois Subclass that the Products had approval or characteristics that it did not have;

- Defendant represented to Plaintiffs Aldridge and Weinman and the Illinois Subclass that the Products were of a particular standard, quality, or grade when they were actually of another;

- Defendant advertised to Plaintiff Aldridge and Weinman and the Illinois Subclass goods with intent not to sell them as advertised;

- Defendant engaged in other fraudulent or deceptive conduct creating a likelihood of confusion or misunderstanding; and

- Defendant represented that consumers' purchases of the Products conferred or involved rights that the transactions did not have or involve.

259.258.        As described herein, Defendant repeatedly advertised, both on the Products' labels and through a national advertising campaign, *inter alia*, that the Products are "Max Strength" lidocaine products.

260.259.        Contrary to its representations as discussed herein, the Products are not "Max Strength" lidocaine products because Defendant's Products only contain a 4% concentration of lidocaine when other comparable lidocaine products exist in the marketplace that contain a greater amount of lidocaine (and thus, are stronger) than Defendant's Products.

261.260.        Defendant had exclusive knowledge of material facts concerning the deceptive nature of the Products' labeling and advertising, including that the Products were not "Max Strength" lidocaine products, as discussed herein.

262.261.        Defendant's representations were material because they were likely to deceive reasonable consumers, including Plaintiffs Aldridge and Weinman and Illinois Subclass Members.

263.262.	The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to Plaintiffs Aldridge and Weinman and Illinois Subclass Members that they could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

264.263.	As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs Aldridge and Weinman and Illinois Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain in purchasing Defendant's Products.

265.264.	Plaintiffs Aldridge and Weinman and Illinois Subclass Members seek all monetary and non-monetary relief allowed by law, including injunctive relief and reasonable attorney's fees.

**COUNT X**
**FRAUD**
**(On Behalf of All Plaintiffs and the Nationwide Class)**

266.265.	Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

267.266.	Plaintiffs Richie Ablaza, John Barone, Linda Cheslow, Betty Fellows, Michael Falco, Melissa Aldridge, and Lee Weinman bring this count on behalf of themselves, the Nationwide Class, California Subclass, New York Subclass, and Illinois Subclass against Defendant, Sanofi.

268.267.	Rule 9(b) of the Federal Rules of Civil Procedure provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

- **WHO:** Defendant, Sanofi-Aventis U.S., LLC., made material misrepresentations of fact in its labeling and marketing of the Products by representing that the Products are "Max Strength" lidocaine products.

- **WHAT:** Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products are "Max Strength" lidocaine products. Defendant deceived Plaintiffs and Class Members with their

"Max Strength" labeling because other lidocaine products exist in the market that contain a higher amount (i.e. 5%) of lidocaine. Defendant knew or should have known this information is material to all reasonable consumers and impacts consumers' purchasing decisions. Yet, Defendant has and continues to represent that the Products are "Max Strength" lidocaine products when they are not.

- **WHEN:** Defendants made material misrepresentations detailed herein, including that the Products are "Max Strength" lidocaine products, continuously throughout the applicable Class period(s).

- **WHERE:** Defendant's material misrepresentations that the Products are "Max Strength" lidocaine products were made on the front labeling and packaging of the Products and throughout Defendant's advertising. Defendant's representations are written with bold lettering with yellow highlight in the case of the IcyHot Cream and the IcyHot Patch, and are written with bold lettering against a contrasting blue highlight in the case of the Aspercreme Cream and the Aspercreme Patch – both of which instantly catch the eye of all reasonable consumers, including Plaintiffs, at the point of sale in every transaction. The Products are sold in brick and mortar and online retailers nationwide.

- **HOW:** Defendant made written misrepresentations right on the front label of the Products that the Products were "Max Strength" lidocaine products even though other stronger lidocaine products are available in the market. As such, Defendant's "Max Strength" representations are false and misleading.  As discussed in detail throughout this Second Amended Complaint, Plaintiffs and Class Members read and relied on Defendant's "Max Strength" representations before purchasing the Products.

- **WHY:** Defendant misrepresented its Products as being "Max Strength" lidocaine products for the express purpose of inducing Plaintiffs and Class Members to purchase the Products at a substantial price premium. Given that Defendant is a large scale and sophisticated pharmaceutical company with somewhere between 5000-

SECOND AMENDED CLASS ACTION COMPLAINT                    Case No. 4:21-cv-01942-JST

10,000 employees[13] and the fact that it manufacturers both over the counter and prescription products,[14]   Plaintiffs allege that all reasonable inferences point to Defendant knowing that there were higher strength prescription lidocaine products available than the ones it was selling as "Max Strength."   Defendant purposely marketed the Products as "Max Strength"  to gain a competitive advantage in the marketplace. Accordingly, by marketing its Product as "Max Strength," when it knew the Products were not, Defendant intended consumers, including Plaintiffs and the Class, into being fraudulently induced into purchasing the Products.  Indeed, the amount of space of a product's label is limited and by making the choice to include the "Max Strength" in such a prominent and conspicuous position, it is clear that Defendant intended consumers to rely on the challenged representation.

269.268.     As alleged herein, Defendant Sanofi made these material "Max Strength" representations in order to induce Plaintiffs and Class Members to purchase the Products.

270.269.     As alleged in detail herein, Sanofi knew the misrepresentations and omissions regarding the Products were false and misleading but nevertheless made such representations and omissions through the marketing, advertising and on the Products' labeling. In reliance on these representations and omissions, Plaintiffs and Class Members were induced to, and did, pay monies to purchase the Products.

271.270.     Had Plaintiffs and the Class known the truth about the Products, they would not have purchased the Products.

272.271.     As a proximate result of the fraudulent conduct of Defendant, Sanofi, Plaintiffs and Class Members paid monies to Defendant, through its regular retail sales channels, to which Defendant is not entitled, and have been damaged in an amount to be proven at trial.

**COUNT XI**
**UNJUST ENRICHMENT**
**(On Behalf of All Plaintiffs and the Nationwide Class, or Alternatively, the California, New York, and Illinois Subclasses)**

---

[13] https://www.linkedin.com/company/sanofi-aventis-u.s.-llc
[14] https://www.sanofi.us/en/products-and-resources/prescription-products and
https://www.sanofi.us/en/products-and-resources/OTC-products

41

**(In the Alternative to Count I)**

~~273.~~272.　　Plaintiffs repeat and re-allege all proceeding factual allegations above as if fully set forth herein.

~~274.~~273.　　Plaintiffs Richie Ablaza, John Barone, Linda Cheslow, Betty Fellows, Michael Falco, Melissa Aldridge, and Lee Weinman bring this count on behalf of themselves and the Nationwide Class against Defendant in the alternative to Count I.

~~275.~~274.　　Plaintiffs and Class Members conferred benefits on Defendant by purchasing Defendant's Products at a premium price.

~~276.~~275.　　Defendant had knowledge of such benefits.

~~277.~~276.　　Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class Members purchasing its Products. Defendant's retention of these monies under these circumstances is unjust and inequitable because Defendant falsely and misleadingly labeled its Products as "Max Strength" lidocaine products when it knew or should have known that those representations were false or misleading.  Defendant's "Max Strength" misrepresentations and omissions caused injuries to Plaintiffs and Class Members because they would not have purchased (or paid a premium) for Defendant's Products had they known the true facts regarding the "Max Strength" claims made on the Products' labels and in Defendant's advertising.

~~278.~~277.　　Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and Class Members for unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

　　a.　For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and/or Subclass and Plaintiffs' attorneys as Class Counsel to represent the Class Members;

42

b.   For an order declaring that Defendant's conduct violated the laws referenced herein;

c.   For an order finding in favor of Plaintiffs and the Class and/or Subclass on all counts asserted herein;

d.   For statutory and compensatory damages in amounts to be determined by the Court and/or jury;

e.   For prejudgment interest on all amounts awarded;

f.   For injunctive relief as pleaded or as the Court may deem proper;

g.   For an order of restitution and all other forms of equitable monetary relief;

h.   For an order awarding Plaintiffs and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit;

i.   Damages in an amount to be determined at trial; and

j.   For such other and further relief as the Court may deem proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all claims and issues so triable.

Dated: August 1, 2022                    Respectfully submitted,

*/s/ Jonathan Shub*
Jonathan Shub (State Bar No. 237708)
Kevin Laukaitis*
**SHUB LAW FIRM LLC**
134 Kings Highway E, 2nd Floor
Haddonfield, NJ 08033
T: 856-772-7200
F: 856-210-9088
jshub@shublawyers.com
klaukaitis@shublawyers.com

Nick Suciu III*
**BARBAT MANSOUR SUCIU & TOMINA PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, Michigan 48301
Tel: (313) 303-3472
Email: nicksuciu@bmslawyers.com

Trenton R. Kashima (CA SBN No. 291405)

43

**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN PLLC**
401 West C St., Suite 1760
San Diego, CA 92101
Tel: (714) 651-8845
tkashima@milberg.com

Charles E. Schaffer*
David C. Magagna Jr.*
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Phone: (215) 592-1500
Fax: (215) 592-4663
cschaffer@lfsblaw.com
dmagagna@lfsblaw.com

Spencer Sheehan*
**SHEEHAN & ASSOCIATES, P.C.**
60 Cuttermill Rd, Ste 409
Great Neck, NY 11021-3104
T: (516) 268-7080
F: (516) 234-7800
spencer@spencersheehan.com

Susan S. Brown (State Bar No. 287986)
**SUSAN BROWN LEGAL SERVICES**
388 Market Street, Suite 1300
San Francisco, CA 94111
Phone: (415) 712-3026
susan@susanbrownlegal.com

*Pro Hac Vice* Application Submitted or Granted

*Attorneys for Plaintiffs
and Putative Class Members*

SECOND AMENDED CLASS ACTION COMPLAINT                     Case No. 4:21-cv-01942-JST